UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT J. TREASE,

      Petitioner,

v.                                 Case No.  8:11-cv-233-T-23TBM
                                                     **DEATH CASE**

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Trease petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges the validity of both his conviction for murder and his sentence of death.  The respondent moves (Doc. 15) to dismiss the petition as time-barred.  The motion is supported by numerous exhibits.  ("Respondent's Exhibit __")  Each party replied.  (Doc. 24 and 25)  The petition is untimely.

## FACTS AND PROCEDURAL BACKGROUND

The operative facts supporting the conviction, as found in *Trease v. State*, 768 So. 2d 1050, 1052 (Fla. 2000) ("*Trease I*"), are as follows:

> On August 17, 1995, Hope Siegel arranged a date with the victim, Paul Edenson, so Trease could learn where the victim hid his safe.  When Siegel arrived at the victim's home they talked for a while, after which Siegel departed and walked to Trease's location, and told him that the victim did not have a safe.  Trease followed her back to the victim's house where he surprised the victim and battered him in an effort to get the sought-after information.  Upon the victim's insistence that he did not have a safe in the house, Trease told Siegel to get a gun which Trease put to the victim's head as he continued the

questioning.  The victim remained uncooperative so Trease fired a nonlethal bullet into his head and then sent Siegel for a knife with which he cut the victim's throat.  An expert medical witness testified that the victim would have died a few minutes later.

Subsequent to their arrest, Trease denied any knowledge of the crime, but Siegel made a taped statement implicating both.  The State had no physical evidence tying Trease to the crime, so Siegel's testimony was critical at trial.  The jury found Trease guilty of first-degree murder, burglary, and robbery with a firearm.

The findings supporting the death sentence, as determined in *Trease I*, 768 So. 2d at 1052-53, are as follows:

During the penalty phase of the trial, the State submitted aggravating evidence that Trease had been previously convicted of several violent felonies; that the murder was committed to facilitate a burglary or robbery, to gain a pecuniary interest, and to avoid lawful arrest; and that the murder was heinous, atrocious, and cruel.  Trease submitted mitigating evidence that he was abused as a child, that he adjusted well to incarceration, that he helped prevent the suicide of an inmate, and that Siegel had received a disparate sentence.  The trial court imposed the death sentence[FN1] in compliance with the jury's eleven-to-one vote and Trease filed the instant appeal.

FN1.  The trial court found the following statutory aggravating factors:  (1) previous violent felonies against persons; and that the murder was committed (2) while engaged in a burglary or robbery, (3) to avoid arrest, and (4) for pecuniary gain; and (5) the murder was heinous, atrocious or cruel.  Based on Trease's evidence, the trial court found three nonstatutory mitigating factors and assigned weight to each factor:  (1) Trease's abuse as a child — "considerable" weight; (2) Trease adjusted well to incarceration and helped prevent an inmate suicide — "little or no" weight; and (3) Siegel's disparate sentence — "little" weight.  The trial court gave "great weight" to the jury's recommendation, and concurred "with the jury's finding that the aggravating circumstances found to exist outweigh[ed] the mitigating circumstances."

A procedural background is required to understand the respondent's timeliness argument.

The respondent's motion to dismiss thoroughly reviews the convoluted procedural background (Doc. 15 at 3-11), which is summarized as follows. Trease's murder conviction and sentence were affirmed on direct appeal. *Trease I*, 768 So. 2d at 1050. In response to Trease's motion to dismiss counsel, the Capital Collateral Regional Counsel - Middle Region ("CCRC-M") filed a "shell" petition for post-conviction relief questioning Trease's competency. The post-conviction court conducted a hearing, found Trease competent, and dismissed both CCRC-M and their petition. Nearly a year later Trease "changed his mind" and, at his request, the post-conviction court re-appointed CCRC-M and re-instated the earlier "shell" petition. After summarily denying some claims the court conducted an evidentiary hearing. Before the post-conviction court issued its final order, Trease again moved to dismiss his counsel. CCRC-M appealed the denial of relief, which caused Trease to complain to the Florida supreme court that he had authorized no appeal. After briefing in the supreme court, an additional hearing in the post-conviction court, and more briefing in the supreme court, *Trease v. State*, 41 So.3d 119 (Fla. 2010) ("*Trease II*"), dismissed the appeal of the denial of post-conviction relief. Trease's Section 2254 petition followed.

- 3 -

**MOTION TO DISMISS**

The respondent moves to dismiss the petition as time-barred.  The

Anti-Terrorism and Effective Death Penalty Act created a limitation for a petition for

the writ of habeas corpus under 28 U.S.C. § 2254.  "A 1-year period of limitation

shall apply to an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court.  The limitation period shall run from the

latest of . . . the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review . . . ."  28 U.S.C.

§ 2244(d)(1)(A).  Additionally, "[t]he time during which a properly filed application

for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation

under this subsection."  28 U.S.C. § 2244(d)(2).

Trease's conviction was final on November 15, 2000,[1] and the limitation

expired one year later, absent tolling for a state post-conviction proceeding.  Six

months elapsed before CCRC-M filed a state Rule 3.850 motion for post-conviction

relief on May 22, 2001.  (Respondent's Exhibit B-1 at 9).  But that motion was filed

after Trease told CCRC-M that "he did not want [counsel] to proceed" with a

---

[1]  Trease's direct appeal concluded on August 17, 2000.  *Trease I*, 768 So. 2d 1050.  The conviction became final after ninety days, the time allowed for petitioning for the writ of *certiorari*. 28 U.S.C. § 2244(d)(1)(A).  *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), and *Jackson v. Sec'y, Dep't Corr.*, 292 F.3d 1347 (11th Cir. 2002).

- 4 -

post-conviction motion.  (Respondent's Exhibit B-1 at 72)  Trease disavowed

counsel's motion for post-conviction relief and moved to dismiss both counsel and

CCRC-M's motion.  At the post-conviction hearing, Trease answered "Absolutely"

when asked whether it was his "desire at this time that the court dismiss counsel and

that [his] sentence be carried out."  (Respondent's Exhibit B-1 at 61)  Trease stated

that he had no interest in having stand-by counsel appointed to assist him.

(Respondent's Exhibit B-1 at 68)  When asked to disclose some of his reasons for not

wanting counsel, Trease declared as follows (Respondent's Exhibit B-1 at 74-75):

>       Defendant:      Number one, judge, it's my right to not have
>                       counsel if that's what I want, and that's, you
>                       know, without going into areas that I don't want
>                       to go into, that's my first and foremost reason.  I
>                       don't care to be here any longer.  It's very simple.
>                       I mean, competent?  Yeah, I'm competent.  But a
>                       man can make up his mind that he feels enough
>                       is enough, and I've had enough.  And I'm not
>                       going to change my mind.  I'm not going to have
>                       an attorney, and I'm very appreciative of the
>                       Court if you would let me go pro se and get my
>                       sentence carried out.
>
>       . . . .
>
>       Court:          And you're telling me that you believe you have
>                       a right to be executed and to have that sentence
>                       carried out?
>
>       Defendant:      I certainly do.  As Hauser (Phonetic) vs
>                       Singletary?  Hauser ran into the same problems
>                       up at F[lorida] S[tate] P[rison], friends of the
>                       court, friends coming in and saying, "Well, we
>                       don't want him to be executed."  Unless a man is
>                       incompetent, I feel he has the right to do what he
>                       wants to do, and in the situation that I'm in, I

> have that right, and I fully understand what I'm
> doing and what I'm asking the Court to do, and
> my mind will not change.

Trease read a prepared statement in which he requested a restraining order to preclude anyone from filing a motion on his behalf to stop his execution.[2]  The post-conviction court agreed with Trease's self-assessment that he is "as competent as the next person" and found that his "request to discharge his lawyers is made knowingly, intelligently, and voluntarily." (Respondent's Exhibit B-1 at 48)  The post-conviction court discharged counsel and dismissed CCRC-M's unauthorized post-conviction motion.  (Respondent's Exhibit B-1 at 49)

Because he adamantly disavowed anyone filing anything to challenge either his conviction or his sentence, Trease is entitled to no tolling for CCRC-M's unauthorized post-conviction motion.  Because his conviction was final on November 15, 2000, Trease's deadline for filing a Section 2254 petition was one year later in November 2001, absent tolling for a "properly filed" state proceeding.  Trease filed no qualifying post-conviction proceeding before the federal limitation expired. Consequently, the federal petition is untimely.

---

[2]  In relevant part, in his statement Trease waived  "[a]ny and all pending and future appeals of my conviction, and sentence of death in this case," and requested the court to "issue a restraining order against the Offices of the Capital Collateral Counsel - Northern, Central, and Southern regions, CCR, and any and all interested parties to this case, to prevent and bar said counsel, and interested parties, from [both] filing any 'Friend of the Court' or 'Next Friend' petitions in this case in the future" and "from contacting Defendant's/Appellant's family members, in any form, or fashion, from this date forward, in regards to this case, or Defendant/Appellant in general." (Respondent's Exhibit B-1 at 77-79)  The entire statement was filed as part of the post-conviction proceeding.  (Respondent's Exhibit B-1 at 51-52)

On June 7, 2002, seven months after the federal limitation expired, Trease submitted a letter to the state court requesting the appointment of counsel and the re-instatement of the May 22, 2001, motion for post-conviction relief.  The state court granted Trease's request and "re-instated" the motion.  Trease argues that the "re-instatement" entitles him to tolling from May 22, 2001.  *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003), rejects Trease's argument:

> [W]e hold that the petitioner's belated appeal motion was not pending during the limitations period.  The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a "properly filed" post-conviction application actually pending in state court.  A state application filed after expiration of the limitations period does not relate back so as to toll idle periods preceding the filing of the federal petition.  The plain language of the statute provides for tolling "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2).  While a "properly filed" application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired.  In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired.

*Moore* instructs that, once the limitation expires, a subsequent state proceeding cannot "reset," "restart," or "revive" the federal one-year limitation.  *Cf. Allen v. Siebert*, 552 U.S. 3, 4 (2007) ("We therefore reiterate now what we held in *Pace [v. DiGuglielmo*, 544 U.S. 408 (2005)]:  'When a post-conviction petition is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2).' 544 U.S., at 414, 125 S. Ct. 1807 (quoting *Carey [v. Saffold]*, 536 U.S. [214,] 226, 122 S.

Ct. 2134; alteration in original).”), *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir.

2004) (“[O]nce a deadline has expired, there is nothing left to toll.”), and *Tinker v.*

*Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001) (“[A] properly and timely filed

petition in state court only tolls the time remaining within the federal limitation

period.”), *cert. denied*, 534 U.S. 1144 (2002).

   Trease argues that, when he disavowed the unauthorized motion for

post-conviction relief, he was never advised that he might forfeit federal review.  The

post-conviction court cautioned Trease that “you can’t come back to this court <u>or any</u>

<u>other</u> <u>court</u> and say . . . this is wrong, I need to have a lawyer,” to which Trease

responded, “No Judge, I’m not going to change my mind[,] I’ve thought about this

long and hard . . . .”  (Respondent’s Exhibit B-1 at 73-74) (emphasis added)  Perhaps

no specific warning was issued about waiving potential federal review, but Trease

clearly understood that he was precluding a challenge to both his conviction and his

sentence.  At the beginning of the hearing on the unauthorized motion for

post-conviction relief, CCRC-M’s counsel stated that he “filed a ‘shell’ 3.850 . . . the

main purpose of [which] is [to] stop the federal clock . . . .”  (Respondent’s Exhibit

B-1 at 54-55)  In his written statement, prepared before the hearing, Trease

specifically waived “[a]ny and all pending and future appeals of my conviction, and

sentence of death in this case.”  (Respondent’s Exhibit B-1 at 51)  Trease’s clear

intent was to preclude any court from reviewing his conviction or sentence.  To now

contend that Trease did not understand that he was waiving potential federal review is specious.  Trease's other arguments that the petition was timely are rejected.

Lastly, Trease argues that his "actual innocence" excuses his untimeliness and cites *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir.), *cert. denied sub nom San Martin v. Tucker*, ___ U.S. ___, 132 S. Ct. 158 (2011), for the proposition that "[a] court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a 'fundamental miscarriage of justice' because it would require that an individual who is actually innocent remain imprisoned."  Actual innocence is not a separate claim that challenges the conviction, but a "gateway" through which a defendant may pass to assert a constitutional challenge to the conviction.  In other words, actual innocence is a gateway that permits the review of time-barred or procedurally barred federal claims.  Passing through the gateway is difficult because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The new evidence must show that, in fact, Trease did not commit the offense.  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  And the new evidence must compel a finding of not

guilty.  "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).  Neither Trease nor the respondent briefed the merits of Trease's actual innocence.  Instead, both request leave to brief the issue.

Accordingly, the motion to dismiss (Doc. 15) is **GRANTED** to the extent that the petition for the writ of habeas corpus (Doc. 1) is untimely.  Trease has THIRTY (30) DAYS to present the factual and legal basis for his claim of "actual innocence." Trease must specifically cite the record showing that he exhausted this claim.  The respondent has THIRTY (30) DAYS to respond and Trease TWENTY (20) DAYS to reply.

ORDERED in Tampa, Florida, on December 16, 2011.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE